IN THE UNITED STATES DISTRICT COURT FOR
THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

KEWIN GREENHILL,                        )
as parent and next friend of P.G., *et al*,   )
          Plaintiffs,                   )
                                        )
          v.                            )          Civil Action No. 1:19-cv-868
                                        )
LOUDOUN COUNTY SCHOOL BOARD,            )
          Defendant.                    )

## MEMORANDUM OPINION

Plaintiffs Kewin and Elizabeth Greenhill brought this action as parents and next

friends of P.G., their minor (nine-year old) son, [1] under the Individuals with Disabilities

Education Act, 20 U.S.C. § 1400, *et seq.*, (the "IDEA") seeking to overturn an April 2019

decision by a Hearing Officer in favor of Defendant Loudoun County School Board (the

"School Board"). The Hearing Officer, after a two-day hearing, found that the School

Board had, for the period at issue, provided P.G. with a free appropriate public education

("FAPE").

This matter involves a review of a state administrative decision under the IDEA.[2]

Plaintiffs seek to overturn the Hearing Officer's decision on the basis that the School Board

---

[1] Although plaintiffs were originally proceeding *pro* se in this matter, counsel entered an
appearance on behalf of plaintiffs on February 3, 2020. Counsel did not enter an appearance on
behalf of P.G.

[2] The School Board filed its motion as a motion to dismiss. Here, however, the administrative
record and transcripts of the administrative due process hearing have been submitted and the
parties pleadings both relied on those documents.   Accordingly, the Court construes the School
Board's motion as a motion for judgment on the administrative record.

1

failed to provide P.G. with a FAPE and acted in bad faith and that the Hearing Officer failed to consider properly all of the evidence. The School Board argues that the Hearing Officer's decision was regularly made and that there is no basis on which that decision should be reversed.

Months after briefing in this matter was completed and a hearing was held, plaintiffs filed a motion to present additional evidence. Plaintiffs seek to introduce further evaluations of P.G. as well as testimony by Plaintiff Elizabeth Greenhill and by Dr. Ronald S. Federici.

Because plaintiffs have failed to state a claim for relief under the IDEA or Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794 ("Section 504"), the School Board's motion must be granted and judgment must be entered in favor of the School Board.

## I.

The following facts are derived from the administrative record and the uncontroverted allegations in the parties' pleadings.

P.G. is a nine-year old African-American student attending Ashburn Elementary School, a school within the Loudoun County Public School system. Plaintiffs, concerned with P.G.'s focus and attention, referred P.G. for an evaluation. Plaintiffs requested an individualized education plan ("IEP") for P.G.

In May 2018, the School Board developed a "Child Study Team Intervention Plan," which identified four areas of focus for P.G.: (i) increased work completion/on-task behavior; (ii) decreased impulsivity/increased self-regulation; (iii) increased time on-

task; and (iv) increased reading achievement. The School Board proposed providing P.G. with movement breaks, small group instruction, and preferential seating.

On July 17, 2018, the eligibility committee met to determine whether P.G. met the criteria for an IEP under the IDEA (the "Eligibility Meeting"). As a result of that meeting, the School Board denied P.G. an IEP, based on his identified "other health impairments." As part of the Eligibility Meeting, plaintiffs offered a report that they had obtained from Dr. Federici, a neuropsychologist and psychopharmacologist who diagnosed P.G. with the following: (i) unspecified attention deficit/hyperactivity disorder ("ADHD"); (ii) specific learning disorder, with mild impairment in reading comprehension and written expression; (iii) persistent depressive disorder with anxious distress; (iv) asthma and allergies; and (v) mild/moderate nonverbal learning disorder/visual-perceptual processing disorder. Following the Eligibility Meeting, the School Board determined that P.G. did not require special education. Instead, the School Board offered P.G. a Section 504 plan.[3] Plaintiffs objected, based on their belief that a Section 504 plan does not meet P.G.'s academic needs.

On January 14, 2019, plaintiffs and their advocate, Kandise Lucas,[4] requested a

---

[3] A Section 504 Plan is a plan developed to provide students with disabilities certain accommodations that would enable them to participate in educations services and programs provided by a school in compliance with Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794.

[4] Ms. Lucas does not appear to be an attorney and it does not appear that she has assisted plaintiffs in this appeal.

due process hearing. The request was granted, and a public due process hearing occurred over a two-day period on March 8 and March 11, 2019.

At the due process hearing, plaintiffs appeared in person and were represented by their advocate, Ms. Lucas. The parties were both permitted to make opening statements, call witnesses, cross-examine witnesses, submit exhibits, lodge objections, and file post-hearing briefs. *See* Transcript of March 8 and 11, 2019 hearing (Dkts. 14-1 to 14-5) ("Transcript" or "Tr."). Plaintiffs and the School Board made opening statements, called seven witnesses, examined witnesses on direct examination and cross examination, asserted objections, and filed written closing statements. *See* Hearing Officer Decision, dated April 1, 2019, at 2 ("Decision").

Six of the seven witnesses called during the hearing were school employees and the School Board qualified two of those witness as experts: (i) Barbara Fromal, an eligibility coordinator and a special education teacher; and (ii) Kim Petz a special education teacher and educational diagnostician. *See* Decision at 21. Plaintiffs also called P.G.'s mother, Plaintiff Elizabeth Greenhill, as a witness. Mrs. Greenhill has never been a teacher and does not have a degree or license in education. *See id.* Although plaintiffs had the opportunity to do so, plaintiffs did not call any independent expert witness and instead, relied on the School Board's witnesses. *Id.* at 18 & n.2.[5] The School Board also

---

[5] Importantly, over the objection of the School Board, the Hearing Officer permitted Dr. Federici to testify electronically, rather than in person. Plaintiffs, however, chose not to have Dr. Federici as a witness either electronically or in person. *See* Decision at 17. Accordingly, the only expert witnesses to offer testimony at the due process hearing were the two School Board

submitted exhibits for the Hearing Officer's review. Again, despite being reminded by the Hearing Officer that plaintiffs had not introduced exhibits into the record, plaintiffs failed to seek to offer Dr. Federici's report *or any other exhibit* as evidence at the due process hearing. *See id.* at 18 and n.2.

On April 1, 2019, the Hearing Officer[6] ruled in favor of the School Board in a 24-page Decision. *See* Decision at 23. At the outset, based on the due process hearing complaint submitted by plaintiffs, the Hearing Officer identified four issues raised at the hearing:

> (i) whether the School Board correctly determined on July 17, 2018 that P.G. did not require an independent educational plan;
>
> (ii) whether the Section 504 Plan enacted by the School Board on July 17, 2018 was appropriate;
>
> (iii) whether the eligibility committee considered the neuropsychological evaluation prepared by Dr. Federici; and
>
> (iv) whether plaintiffs were given an opportunity to participate in the meeting and have their input considered.

*See* Hearing Officer Decision ("Decision") at 2.

In her Decision, the Hearing Officer first found that the School Board correctly determined that P.G. was not eligible to receive special education services under the

_____

employees.

[6] A hearing officer is chosen from a list of hearing officers maintained by the Office of the Executive Secretary of the Supreme Court of Virginia. A hearing officer must be a member in good standing of the Virginia Bar, must have been in practice for at least five years, and must have completed a training course approved by the Executive Secretary of the Supreme Court. *See* Va. Code §2.2-4024.

IDEA. In this regard, the Hearing Officer found:

(i)     that P.G. was meeting academic standards;

(ii)    that P.G. demonstrated the capacity to comprehend course material;

(iii)   that P.G. did not exhibit unusual or alarming conduct; and

(iv)    that P.G.'s teachers did not recommend special education for him.

*See id.* at 19. Indeed, the Hearing Officer noted that, during the 2017-2018 school year, P.G. showed significant growth in academic performance and in attention to tasks in the classroom setting. Petz, who was designated as an expert, testified that she performed an educational evaluation of P.G. and that P.G.'s achievements all fell within the normal range. Tr. at 519-22. Similarly, one of P.G.'s teachers testified that P.G. had shown growth in all subject areas. Tr. at 81-82.

Next, the Hearing Officer found that the School Board reviewed Dr. Federici's evaluation during the Eligibility Meeting and that Mrs. Greenhill had conceded as much in her testimony. Decision at 17, 21. The Hearing Officer noted that Fromal testified that the School Board's eligibility determination form specifically referred to "the medical findings from Dr. Federici" and that Dr. Federici's report was discussed during the Eligibility Meeting. *Id.* at 14(citing Tr. at 270-71). Petz also testified that Dr. Federici's report was considered. *Id.* at 17 (citing Tr. at 537). The Hearing Officer also found it important that Mrs. Greenhill acknowledged in the due process hearing that the eligibility team had read the report and "took [Dr. Federici's report] into consideration." *Id.*

The Hearing Officer also found that plaintiffs were provided the opportunity to participate in the Eligibility Meeting and did participate in that meeting. Decision at 23. Specifically, the Hearing Officer found that plaintiffs were asked to participate during the Eligibility Meeting by school employees and that school employees attempted to solicit questions and concerns from plaintiffs during that meeting. *Id.* at 4. The Hearing Officer noted that plaintiffs declined to express their concerns to the eligibility team and did not speak much during the meeting. *Id.* at 4-5. Importantly, the Hearing Officer relied on testimony from the School Board's employees that the parents' views on various topics were sought during the Eligibility Meeting and that the parents did not express disagreement with some of the eligibility team decisions regarding appropriate areas of focus. *Id.* at 6. The Hearing Officer also noted that, at the Eligibility Meeting, plaintiffs were accompanied by Joyce Visnick, a private speech therapist, apparently for the purpose of assisting plaintiffs. *Id.* at 3.

With respect to the Section 504 Plan, the hearing officer found that plan was "consistent with the data presented and considered by the eligibility committee" and was appropriate. Decision at 22. The Hearing Officer noted that the eligibility team concluded that P.G. did not qualify as a student with a disability under the "Other Health Impairment" classification, the only potentially applicable classification discussed at the hearing or proposed by plaintiffs. *Id.* at 5. Again, the Hearing Officer relied on testimony regarding P.G.'s significant growth over the 2017-18 school year, without special education services. *Id.* at 6. The Hearing Officer also noted testimony from school

7

employees that the Section 504 Plan had been working for P.G. and that P.G. was viewed as a success story at the school. *Id.* at 9, 11.

On June 28, 2019, plaintiffs filed this appeal from the Decision of the Hearing Officer to the district court as permitted pursuant to the IDEA. On September 20, 2019, oral argument was heard in the district court. In the course of oral argument, the parties made several references to the due process hearing transcript. Accordingly, the School Board was ordered to submit a copy of the hearing transcript for the record and it did so. That hearing transcript has been reviewed in this appeal.

On February 3, 2020, current counsel entered an appearance on behalf of plaintiffs. Counsel did not enter an appearance on behalf of P.G. On February 11, 2020, plaintiffs moved to produce additional evidence, including further evaluations of P.G. as well as testimony by Mrs. Greenhill and Dr. Federici. The School Board has not yet filed a response to plaintiffs' motion, although the time to do so has not yet expired.

## II.

It is first necessary to address whether plaintiffs, P.G.'s parents, are permitted to pursue claims on behalf of their son P.G. Settled authority makes clear that they may not do so. The Fourth Circuit has held that "non-attorney parents may not litigate the claims of their minor children in federal court." *Myers v. Loudoun Cnty. Pub. Schs.*, 418 F.3d 395, 401 (4th Cir. 2005). Although the Supreme Court has held that "[p]arents enjoy rights under IDEA; and they are, as a result, entitled to prosecute IDEA claims on their own behalf," *Winkelman ex rel. Winkelman v. Parma City Sch. Dist.*, 550 U.S. 516, 531

8

(2007), courts within the Fourth Circuit and elsewhere have consistently required parents in post-*Winkleman* IDEA cases to secure counsel to litigate claims asserted solely on behalf of a minor child.[7] While this action is clearly instituted on behalf of P.G., plaintiffs also seek relief on their own behalf. *See* Compl. at 1 ("seeks a ruling in favor of the Parent and Student"); *id.* at 34 ("Reverse and vacate the Hearing Officer's April 1, 2019 Decision to the extent it was adverse to the Parent . . ."). Moreover, plaintiffs are *pro se* and therefore the complaint should be construed liberally as asserting claims not only on behalf of P.G. but also on behalf of plaintiffs. *See King v. Rubenstein*, 825 F.3d 206, 212-14 (4th Cir. 2016).[8] Accordingly, the analysis properly proceeds to the merits of the appeal.

## III.

Before reaching the merits of this appeal from the Hearing Officer's Decision, it is

---

[7] *See, e.g., Cartharine W. v. Sch. Bd. of Va. Beach*, No. 2:17-cv-645, 2018 WL 4474688, at \*5 (E.D. Va. Sept. 4, 2018) (holding "*Winkleman* does not authorize non-attorney parents to file claims *on behalf of their minor children*")(emphasis in original); *B.D. ex rel. Dragomir v. Griggs*, No. 1:09-cv-439, 2010 WL 2775841, at \*5 (W.D.N.C. July 13, 2010) *aff'd* 419 F.App'x 406 (4th Cir. 2011); *see also Foster v. Bd. of Educ. of City of Chicago*, 611 F. App'x 874, 877 (7th Cir. 2015) ("[W]e have repeatedly held that the rule prohibiting a nonlawyer from representing another person extends to a parent attempting to represent her minor child pro se."); *I.K. ex rel. B.K. v. Haverford Sch. Dist.*, 567 F. App'x 135, 136 n.1 (3d Cir. 2014) (holding that parent could not represent child *pro se* on appeal); *FuQua v. Massey*, 615 F. App'x 611, 612 (11th Cir. 2015) (holding that "the district court properly granted the motion to dismiss because Fuqua sought to represent her minor daughter, but, as a non-attorney, she was not permitted to do so").

[8] *See Sturgis v. Hayes*, 283 F. App'x 309, 312 (6th Cir. 2008) (permitting parents to proceed where, although the parents "did sue on behalf of their children, they also brought all of their claims on their own behalf").

necessary to consider plaintiffs' attempt to supplement the record with additional evidence. Specifically, plaintiffs seek to introduce, pursuant to 20 U.S.C. § 1415(i)(C)(2)(ii), the following evidence: (i) P.G.'s measure of academic progress ("MAP") for the Spring, Fall, and Winter 2019; (ii) testimony from Mrs. Greenhill regarding payments to a special education tutor in 2018; and (iii) testimony by Dr. Federici. At this time, the School Board has not yet had the opportunity to file a response to plaintiffs' motion. Because the supplemental evidence proposed is untimely and promotes hindsight-based review, the motion for additional evidence must be denied.

To be sure, the IDEA provides that district courts "shall hear additional evidence at a party's request" when reviewing a hearing officer's decision. 20 U.S.C. § 1415(i)(2)(C). Nonetheless, the Fourth Circuit has sensibly recognized that there are limited to this requirement; specifically, the Fourth Circuit has held that district courts have the authority to tailor IDEA proceedings. *See Springer v. Fairfax Cnty. Sch. Bd.*, 134 F.3d 659, 666-67 (4th Cir. 1998); *Schaffer ex rel. Schaffer v. Weast*, 554 F.3d 470, 477 (4th Cir. 2009). In *Springer*, the Fourth Circuit held that such authority was necessary to protect the role of due process hearings as the primary forum in which to resolve disputes and to avoid turning due process hearings into "mere dress rehearsal." *Id.* at 667. Following the First Circuit's decision in *Town of Burlington v. Dept. of Educ.*, 736 F.2d 773, 790 (1st Cir. 1984), the Fourth Circuit held that exclusion of "testimony from all who did, or could have, testified before the due process hearing would be an

appropriate limit in many cases." *Springer*, 134 F.3d at 667.[9] The Fourth Circuit has also

cautioned that district courts to be wary of evidence that arises only after an due process

hearing, because it undercuts the review process. *Schaffer ex rel. Schaffer v. Weast*, 554

F.3d 470, 477 (4th Cir. 2009).[10]

An analysis of each of the proposed pieces of evidence makes clear that plaintiffs'

motion to supplement the record must be denied. To begin with, plaintiff suggests that

P.G.'s Spring, Fall, and Winter 2019 MAP scores should be admitted. Plaintiff asserts

that these scores were not available in March 2019 during the administrative due process

hearing. Yet, this is precisely the kind of post-hearing evidence that the Fourth Circuit in

*Schaffer* cautioned against including. Here, the MAP scores were not available at the

time of the due process hearing. As the Fourth Circuit noted in *Schaffer*,

> Assigning dispositive weight to evidence that arises only after the
> administrative hearing presents one additional and important danger:
> turning district court review of IEPs into a second-guessing game that will
> only harm the interests of the disabled children the statute was intended to
> serve.

554 F.3d at 477. This is exactly the kind of hindsight evidence that must be excluded.

---

[9] *See Avijan v. Weast*, 242 F. App'x 77, 81 (4th Cir. 2007) (applying "strict" *Springer* standard and affirming decision to exclude additional evidence that was available but not presented at due process hearing).

[10] The Fourth Circuit has held: "Judicial review of IEPs under the IDEA is mean to be largely prospective and to focus on a child's needs looking forward; courts thus ask whether, at the time an IEP was created, it was reasonably calculated to enable the child to receive educational benefits. But this prospective review would be undercut if significant weight were always given to evidence that arose only after an IEP was created." *Schaffer*, 554 F.3d at 477 (internal citations omitted).

Moreover, admitting such evidence would defeat the purpose of the administrative process, because both parties would need to introduce witnesses and other evidence to explain the results and assign meaning to them. Accordingly, the 2019 MAP scores will not be admitted.

Next, plaintiffs seeks to introduce testimony from Mrs. Greenhill regarding retention of and payments to a tutor and testimony from Dr. Federici regarding P.G.'s need for special instruction. The motion with respect to these two witnesses must also be denied, because plaintiffs did not introduce this testimony at the due process hearing. To begin with, Mrs. Greenhill was available to testify and did testify at the due process hearing. While other witnesses referenced a tutor, Mrs. Greenhill did not. Moreover, Mrs. Greenhill's proposed testimony appears to be nothing more than an attempt to embellish her prior due process hearing testimony. In *Springer*, the Fourth Circuit held that this kind of embellishing testimony should not be permitted, because it reduces "the proceedings before the state agency to a mere dress rehearsal." *Springer*, 134 F.3d at 667.

The request to supplement with respect to Dr. Federici's testimony meets the same fate. Dr. Federici was not called as a witness, despite substantial testimony regarding his report. *See* Decision at 18 n.2. According to plaintiffs' motion, Dr. Federici would testify to both information available prior to the due process hearing, his diagnosis of P.G., as well as the new MAP scores, which became available after the due process hearing and

will not be admitted. Plaintiffs made a strategic decision not to call Dr. Federici,[11] or present expert evidence, at the due process hearing and cannot "escape the consequences of a litigation strategy gone awry" by seeking to introduce his opinions now. *Springer*, 134 F.3d at 667. The *Springer* standard is a "strict approach," but it prevents parties from undermining the administrative process by deciding not to introduce relevant evidence at the due process hearing. *See Avjian*, 242 F. App'x at 81.

In sum, plaintiffs cannot undermine the Hearing Officer's Decision by pointing to evidence not available at the due process hearing or which plaintiffs chose not to introduce at that hearing. Both the additional testimony from Mrs. Greenhill and the new testimony from Dr. Federici must be excluded under *Springer*, which held that "exclusion of testimony from all who did, or could have, testified before the due process hearing would be an appropriate limit in many cases." *Springer*, 134 F.3d at 667. And it is so here. Accordingly, the motion for additional evidence must be denied.

## IV.

A district court reviewing a state administrative decision under the IDEA applies a "modified *de novo* review, giving 'due weight' to the underlying administrative proceedings." *O.S. v. Fairfax Cnty. Sch. Bd.*, 804 F.3d 354, 360 (4th Cir. 2015). The party seeking to overturn a hearing officer's decision bears the burden of proof in

---

[11] Importantly, although plaintiffs made the strategic decision not to call Dr. Federici as a witness, there was significant testimony regarding Dr. Federici's report from other witnesses at the due process hearing and the consideration it received during the Eligibility Meeting.

showing that the decision was erroneous. *See Barnett v. Fairfax Cnty. Sch. Bd.*, 927

F.2d 146, 152 (4th Cir. 1991). In particular, the district court should consider the factual

findings in an IDEA state agency decision to be *prima facie* correct. *See Kirkpatrick v.

Lenior Cnty. Bd. of Educ.*, 216 F.3d 380, 385 (4th Cir. 2000). When factual findings are

"regularly made," a reviewing court must explain any disagreements it has with or

deviations it takes from those findings. *Cnty. Sch. Bd. of Henrico v. Z.P.*, 399 F.3d 298,

304 (4th Cir. 2005). A district court must also give due regard to a hearing officer's

judgments as to the credibility of witnesses. *Doyle v. Arlington Cnty. Sch. Bd.*, 953 F.2d

100, 104-05 (4th Cir. 1991).

## A.

In determining whether a hearing officer's findings were regularly made, the

Fourth Circuit has appropriately focused on the *process* by which those findings were

reached. In *J.P. ex rel. Peterson v. Cnty. Sch. Bd. of Hanover Cnty., Va.*, 516 F.3d 254

(4th Cir. 2008), the Fourth Circuit recognized that the process is "regular" where, as here,

> the hearing officer conducted a proper hearing, allowing the parents and the
> School Board to present evidence and make arguments, and the hearing
> officer by all indications resolved factual questions in the normal way,
> without flipping a coin, throwing a dart, or otherwise abdicating his
> responsibility to decide the case.

*Id.* at 259. In this case, the Hearing Officer: (i) conducted a multi-day hearing; (ii)

permitted opening statements by the parties; (iii) permitted witness testimony, including

direct and cross-examination; (iv) permitted the admission of exhibits; (v) permitted the

parties to object to testimony and exhibits; and (vi) permitted the filing of post-hearing

14

briefs containing proposed findings of fact and conclusions of law. *See* Decision at 2. Moreover, the Decision is thorough, reciting the Hearing Officer's factual findings, how the Hearing Officer evaluated credibility decisions, and how the Hearing Officer reached her ultimate decision. *See* Decision. Thus, the Decision is entitled to deference and is *prima facie* correct.

In attacking the Decision, plaintiffs argue: (i) that the School Board failed to consider Dr. Federici's report; (ii) that the Hearing Officer's credibility determinations were incorrect; (iii) that plaintiffs were denied meaningful participation in the Eligibility Meeting, in part because the School Board failed to provide counseling and training; and (iv) the School Board failed to provide P.G. with FAPE. Plaintiffs' disagreement with the result of the due process hearing does not reveal error. *See Tice ex rel. Tice v. Botetourt Cnty. Sch. Bd.*, 908 F.2d 1200, 1207 (4th Cir. 1990) ("Neither the district court nor this court should disturb an IEP simply because we disagree with its content."). Moreover, each of plaintiffs' arguments fails to demonstrate that the Hearing Officer erred. Accordingly, the School Board's motion must be granted.

Plaintiffs first argue that the eligibility team did not consider Dr. Federici's report and that the Hearing Officer's Decision to the contrary is incorrect. In making this argument, plaintiffs focus on Mrs. Greenhill's testimony that she did not have the opportunity to review the report *at* the Eligibility Meeting. *See* Opp'n at 10-11. Plaintiffs are incorrect, as the testimony before the Hearing Officer was that the hearing recessed to provide members time to review the report. *See* Decision at 4 (citing Transcript).

Moreover, as the Hearing Officer's Decision and the Transcript both disclose, there was testimony from multiple witnesses, and exhibit evidence, indicating that Dr. Federici's report was considered by those present at the Eligibility Meeting. *See* Decision at 12-13, 17 (recounting the testimony of various School Board witnesses stating that they had read Dr. Federici's report); Tr. at 248-49, 267-68, 270-71, 398-99, 441, 537-38, 573.[12] In her testimony, Mrs. Greenhill conceded as much when she testified that she "thought that they had read [Dr. Federici's report] and everybody took it into consideration." Tr. at 472.[13] Accordingly, plaintiffs first procedural challenge to the administrative proceedings fails.

Next, plaintiffs contend that the Hearing Officer incorrectly weighed the credibility of various witnesses. In this regard, the Hearing Officer found that the "professional judgments and opinions" of the School Board's witnesses were "highly

---

[12] Plaintiffs complain that Dr. Federici's report was not read aloud at the Eligibility Meeting, without explaining why this was necessary. *See* Opp'n at 8. The testimony at the due process hearing establishes that Dr. Federici's report was considered and reading the report aloud would have been unnecessary and an inefficient use of time.

[13] Although plaintiffs place great weight on Dr. Federici's report in this appeal, they neither made Dr. Federici available to testify at the due process hearing nor introduced his report as evidence. *See* Decision at 17-18.  In so doing, plaintiffs made a calculated decision and ran the risk that the Hearing Officer – or a reviewing court – would not be able to accurately review whether defendant gave appropriate weight to Dr. Federici's report.  *See Weast v. Schaffer ex rel. Schaffer*, 377 F.3d 449, 456 (4th Cir. 2004) ("For regardless of which side has the burden of proof in an administrative hearing, parents will have to offer expert testimony to show that the proposed IEP is inadequate."). In any event, the evidence at the due process hearing was that defendant did consider Dr. Federici's report at the Eligibility Meeting.

credible," "appropriate," and "supported by the testimony and evidence presented." Decision at 22. On the other hand, the Hearing Officer found Mrs. Greenhill "to be less credible" because "she is not a teacher or conversant with special education law or its procedures." *Id* at. 23. Plaintiffs cite no persuasive reason or record evidence that undermines these conclusions. Plaintiffs argue that "the hearing officer's credibility determinations as it relates to the School Board's claims were inconsistent and unsupported by the evidence." Opp'n at 12. None of the testimony identified in plaintiffs' opposition brief undermines the Hearing Officer's credibility determinations. Instead, plaintiffs' arguments focus on their contention that Dr. Federici's report was not considered and that P.G. requires specialized instruction. *See* id. at 12-13. As the School Board correctly points out that "[t]he mere fact that the hearing officer accepted the evidence of [one party] over [the other] is not a reason to reject the hearing officer's findings." *Z.P.*, 399 F.3d at 305. In sum, the Hearing Officer's credibility determinations are entitled to deference and plaintiffs fail to allege plausible facts demonstrating that those determinations were incorrect. Thus, plaintiffs procedural challenge also fails in this respect.

Plaintiffs next argue that they were not permitted to participate meaningfully in the Eligibility Meeting. In this regard, plaintiffs argue that, because they did not understand Dr. Federici's report or the entirety of the IDEA process, they were not permitted to participate. The IDEA contains procedural safeguards that provide parents "an opportunity for meaningful input into all decisions affecting their child's education."

*Honig v. Doe*, 484 U.S. 305, 311 (1988). Courts have sensibly rejected, however, an

interpretation of the IDEA that would "guarantee that parents must fully comprehend and

appreciate to their satisfaction all of the pedagogical purposes in the IEP." *Colonial Sch.*

*Dist. v. G.K. by and through A.K.*, 763 F. App'x 192, 198 (3d Cir. 2018). Thus, courts

have not required "perfect comprehension by parents" and construe the IDEA to require

"serious deprivation," before parents' participation rights are impacted. *Id.*[14] Moreover,

at both the Eligibility Meeting and the due process hearing, plaintiffs were assisted by an

advocate,[15] who was presumably there to clarify and explain matters for plaintiffs. *See*

Tr. at 491. Additionally, plaintiffs had access to Dr. Federici, because he was plaintiffs'

expert, and presumably plaintiffs could, at any time, have asked Dr. Federici to explain

any portion of the report that they did not understand. Therefore, although plaintiffs had

resources available to them to explain processes or diagnoses that they did not

understand, it appears that plaintiffs did not utilize those resources and instead place the

burden on the School Board to educate plaintiffs to plaintiffs' satisfaction. Such a burden

---

[14] Plaintiffs cite 34 C.F.R. § 300.34(c)(8) to support their argument that defendant was required to educate them regarding Dr. Federici's report and the IDEA/IEP process. Section 300.34(c) defines "related services," which *may* include: (i) assisting parents in understanding the special needs of their child; (ii) providing parents with information about child development, and (iii) helping parents acquire the necessary skills that will allow them to support the implementation of the IEP. *See* 34 C.F.R. § 300.34(c)(8). This section does not require the type of education and training that plaintiffs suggest here, namely assistance with the interpretation of a specific report provided by the parents and assistance with understanding the IDEA more generally. Moreover, this section "does not mandate the provision of parent counseling." *K.L. ex rel. M.L. v. N.Y. City Dept. of Educ.*, No. 11-cv-3733, 2012 WL 4017822, at 13, n.5 (S.D.N.Y. Aug. 23, 2012).

[15] At the Eligibility Meeting, plaintiffs were apparently assisted by Ms. Visnick and, at the due process hearing, plaintiffs were apparently assisted by Ms. Lucas.

goes far beyond the requirement of meaningful participation. Accordingly, the Hearing Officer's finding that plaintiffs participated in a meaningful way at the Eligibility Meeting is not error.

Plaintiffs also argue that their participation at the Eligibility Meeting was not meaningful because their concerns were overlooked. *See* Opp'n at 12-13. That plaintiffs' views did not carry the day does not mean that they did not participate in a meaningful way. *See Paolella ex rel. Paolella v. D.C.*, 210 F. App'x 1 (D.C. Cir. 2006) (rejecting parents' argument that they did not participate meaningfully where "the parents disagreed with the DCPS placement decision").[16] Here, plaintiffs attended the Eligibility Meeting with an advocate and provided input, including consideration of Dr. Federici's report. *See* Decision at 23. Moreover, although plaintiffs complain that the Eligibility Meeting failed to address their concerns, Mrs. Greenhill testified that she did not express her concerns to the team or speak much at all at the Eligibility Meeting. *See* Decision at 4-5; Tr. at 491-92. Thus, when given the opportunity to participate meaningfully in the Eligibility Meeting, plaintiffs declined to do so. Nonetheless, the School Board's employees testified that they considered Dr. Federici's report and plaintiffs were given opportunities to have input. That plaintiffs did not get their desired result does not

---

[16] *See also T.R. v. Sch. Dist. of Phila.*, No. 15-cv-4782, 2019 WL 1745737 (E.D. Pa. Apr. 18, 2019) (holding that "meaningful participation" does not "proscribe a certain course of conduct by a school district"); *B.P. v. N.Y.C. Dept. of Educ.*, 841 F. Supp.2d. 605, 613 (E.D.N.Y. Jan. 6, 2012) (noting that the parents "real objection is not that they lacked the opportunity to participate in the development of the IEP, but rather that the IEP ultimately did not incorporate their concerns").

undermine their participation, as the "IDEA does not mandate that parental preferences guide educational decisions." *M.M. v. Dist. 00001 Lancaster Cnty. Sch.,* 702 F.3d 479, 488 (8th Cir. 2012). Accordingly, the Hearing Officer did not err when she determined that plaintiffs participated in the Eligibility Meeting, and plaintiffs final procedural challenge must therefore fail.

Finally, plaintiffs argue that they have adequately pled a substantive denial of FAPE for P.G. Plaintiffs argue that the testimony at the due process hearing establishes that P.G. requires specialized instruction and that the Section 504 Plan fails to provide required interventions. *See* Opp'n at 13. In the complaint and their other pleadings, plaintiffs' allegations regarding a substantive FAPE violation are limited and conclusory.[17]

In evaluating a substantive FAPE allegation, a court must determine "whether, taking account of what the school knew or reasonably should have known of the student's needs at the time, the [plan] it offered was reasonably calculated to enable the specific student's progress." *Z.B. v. D.C.,* 888 F.3d 515, 524 (D.C. Cir. 2015); *R.F. v. Cecil Cnty. Pub. Schs.,* 919 F.3d 237, 246 (4th Cir. 2019) (holding "to meet its substantive obligation under the IDEA, a school must offer an IEP reasonably calculated to enable a child to

---

[17] Most of plaintiffs' allegations in the complaint, as well as arguments in their opposition brief, assert that P.G. has been denied FAPE by virtue of the lack of meaningful participation by plaintiffs in the Eligibility Meeting and the failure of defendant to consider Dr. Federici's report. In this regard, plaintiffs argue that defendant has engaged in procedural violations of the IDEA. As discussed *supra,* those arguments are meritless.

make progress appropriate in light of the child's circumstances"). The Hearing Officer found that P.G.: (i) "has continued to make progress in the general education setting"; (ii) "is meeting grade-level benchmarks in math and reading and has received all satisfactory and outstanding marks" on all by one of his report cards; and (iii) has been behaving appropriately and commensurate with his third-grade peers. Decision at 16. These findings are supported by the testimony from the due process hearing. *See* Tr. at 25, 81-83, 86-87, 92, 151, 155, 159-161, 217, 221. Indeed, Fromal, who was accepted without objection as an expert witness, testified that P.G. "was making progress," "was responding well to teacher redirection," and "was not in need of specially designed instruction." Decision at 13. Plaintiffs did not introduce any other expert opinions to contradict this testimony. *See id.* 18, n.2. Accordingly, the Hearing Officer found that the School Board provided a FAPE to P.G. The Hearing Officer's finding in this regard is entitled to deference and plaintiffs' conclusory allegations are insufficient to establish error in the administrative process or a substantive violation of the IDEA.[18]

In sum, the Hearing Officer's Decision was regularly made and is entitled to deference. The documents relied upon by plaintiffs, namely the Decision and the Transcript, show that plaintiff cannot plausibly allege that the Hearing Officer erred in

---

[18] In their complaint, plaintiffs also request that declaratory judgment be awarded, including a finding that defendant "intentionally abandoned its federal responsibility to meet the requirements of FAPE." Compl. ¶ 106. Because the Hearing Officer did not err in determining that defendant provided a FAPE, the declaratory judgment sought by plaintiffs is inappropriate.

her decision because: (i) the School Board considered Dr. Federici's report; (ii) the

Hearing Officer's credibility determinations were not error and are entitled to deference;

(iii) plaintiffs were able to participate meaningfully in the Eligibility Meeting; and (iv)

the School Board provided P.G. with a FAPE. Accordingly, the School Board's motion

must be granted and judgment must be entered in favor of the School Board.[19]

## B.

Plaintiffs' complaint also alleges, for the first time, that P.G. has a visual

impairment and requests, also for the first time, that compensatory services from 2017 to

present be awarded and that mandatory professional development regarding parental

participation be ordered. These issues were not raised in plaintiffs' due process complaint

or during the due process hearing. the School Board thus argues that these claims must be

dismissed for failure to exhaust. In their opposition brief, plaintiffs do not appear to

dispute that these issues were not presented during the due process hearing.

Under the IDEA, parents asserting a violation must first request a due process

hearing. *See* 20 U.S.C. § 1415(f). The Fourth Circuit has held that the failure of

parents to exhaust administrative remedies, as plaintiffs have plainly done here, "deprives

us of subject matter jurisdiction over those claims" and those "claims . . . must fail."

---

[19] Because defendant has provided P.G. with a FAPE, plaintiffs are not entitled to "advocacy fees" either as attorney's fees or as a related service. Opp'n at 14-15. Plaintiffs have not alleged any facts regarding the services provided by their advocates at the Eligibility Meeting or at the due process hearing or provided any legal authority establishing that plaintiffs are entitled to such fees. Here, it is unnecessary to decide whether advocacy services would qualify as a related service, because defendant provided a FAPE without additional related services.

*M.M. ex rel. D.M. v. Sch. Dist. of Greenville Cnty.*, 303 F.3d 523, 536 (4th Cir. 2002).

Accordingly, plaintiffs claims based on issues not presented to the Hearing Officer have not been administratively exhausted and judgment on these claims must be entered in favor of the School Board.

## V.

Although it is not clear that plaintiffs state any claims under Section 504, the complaint is construed as an attempt to allege that the Section 504 Plan is deficient. Plaintiffs allege that the School Board engaged in bad faith by failing to consider Dr. Federici's report, refusing to collect data on the effectiveness of the Section 504 Plan, and failing to monitor the Section 504 Plan.

Although plaintiffs may bring both a Section 504 claim and an IDEA claim, the Fourth Circuit has held that where the relief sought is for denial of an appropriate education plaintiffs may not avoid the IDEA's exhaustion requirements. *See Z.G. v. Pamlico Cty. Pub. Sch. Bd. of Educ.*, 744 F.App'x 769, 778-79 (4th Cir. 2018) (holding Section 504 claims subject to IDEA's administrative exhaustion requirements because "the crux of the claims was to alter Z.G.'s educational placement [and] secure educational services").[20] Here, plaintiffs Section 504 claims focus on their argument that

---

[20] *See also Tawes v. Bd. of Educ. of Somerset Cty.*, No. RDB-17-2375, 2017 WL 6313945, at *5 (D. Md. Dec. 11, 2017) (finding that because the gravamen of Plaintiff's claims of negligence, negligence per se, violation of Title VII, and education malpractice was the denial of a FAPE, the IDEA's exhaustion requirement applied); *Vlasaty v. Wake Cty. Pub. Sch. Sys. Bd. of Educ.*, No. 5:17-CV-578-D, 2018 WL 4515877, at *6 (E.D.N.C. Sept. 20, 2018) (finding that the IDEA exhaustion requirement applied to ADA, § 504, and § 1983 claims because "Plaintiffs' claims are uniquely tied to the school environment and to [Plaintiff child's] status as a student within the

the Section 504 Plan is ineffective and does not provide P.G. with what he needs to succeed in school. These claims are inextricably bound up with and mirror plaintiffs' IDEA claims. Accordingly, plaintiffs were required to exhaust their Section 504 claims. They did not do so; therefore, judgment must be entered in favor of the School Board on plaintiffs' Section 504 claims.

In the context of the education of a child with a disability, a finding of discrimination based on disability requires a showing of bad faith or gross misjudgment on the part of the School Board. *See Sellers by Sellers v. Sch. Bd. of City of Manassas, Va.*, 141 F.3d 524, 529 (4th Cir. 1998). This is because Section 504 "does not create any general tort of educational malpractice." *Barnett v. Fairfax Cnty. Sch. Bd.*, 721 F. Supp. 755, 757 (E.D. Va. 1989). To prove discrimination in the education context, "something more than a mere failure to provide [FAPE] required by [the IDEA] must be shown." *Sellers*, 141 F.3d at 529. Accordingly, the "'bad faith or gross misjudgment' standard is extremely difficult to meet, especially given the great deference to which local school officials' educational judgments are entitled." *Doe v. Arlington Cty. Sch. Bd.*, 41 F. Supp. 2d 599, 608-09 (E.D. Va. 1999).

Plaintiffs' allegations do not meet this standard. To begin with, most of plaintiffs' allegations of bad faith, namely those concerning Dr. Federici's report and plaintiffs' ability to participate meaningfully in the Eligibility Meeting, have already been rejected

---

school. Plaintiffs could not bring substantially the same claims against other public facilities.").

*supra*. Plaintiffs also argue that the School Board demonstrated bad faith when it refused to collect data regarding the effectiveness of the Section 504 Plan. *See* Compl. ¶ 101; Opp'n at 17. Plaintiffs' allegations in this regard are entirely conclusory and do not identify any facts regarding what data could or should have been collected; thus, they are not sufficient to state a claim. *See Charlotte–Mecklenburg Bd. of Educ. v. B.H. ex rel. C.H. & W.H.,* No. 3:07cv189, 2008 WL 4394191, at *7 (W.D.N.C. Sept. 24, 2008) (citing *Giarratano v. Johnson,* 521 F.3d 298, 302 (4th Cir.2008)).

In the end, plaintiffs' allegations are nothing more than a disagreement with the Section 504 Plan and its administration. This, too, is insufficient to establish a Section 504 Claim. *See Sellers,* 141 F.3d at 529 (holding that there must be "more than an incorrect evaluation, or a substantively faulty individualized education plan, in order for liability to exist"); *B.M. ex rel. Miller v. S. Callaway R–II Sch. Dist.,* 732 F.3d 882, 888 (8th Cir.2013) ("[S]tatutory noncompliance alone does not constitute bad faith or gross misjudgment."). Even where Section 504 Plans have proven ineffective for several years, courts have held that there is no bad faith or gross misjudgment. *See Petty v. Hite,* No. DKC–13–1654, 2013 WL 6843576, at *1, *3 (D.Md. Dec. 26, 2013). The allegations contained in plaintiffs' complaint do not meet this high bar; accordingly, judgment must be entered in favor of the School Board.

## VI.

For the reasons set forth above, the School Board's motion must be granted, and judgment must be entered in favor of the School Board.

An appropriate order will issue separately.

The Clerk is directed to provide a copy of this Opinion to all counsel of record.

Alexandria, Virginia
February 20, 2020

/s/

T. S. Ellis, III
United States District Judge